We have Ms. Gobin for the appellant and Ms. Peterson for the appellee, and when you're ready, Ms. Gobin. Thank you. May it please the Court of Counsel, my name is Barbara Gobin. I represent the respondent, Lance H., in this appeal for an order of his continued involuntary admission from Randolph County. In this case, the trial court erred in entering this order for several reasons. First, the trial court does not have either the constitutional nor statutory authority to civilly commit an asymptomatic individual. Second, the state's failure to present clear and convincing evidence of the statutory elements for commitment violated Mr. H.'s due process rights. And third, even if the state presented sufficient evidence for the commitment, it violated his right to treatment in the least restrictive setting by not presenting evidence about that. Ms. Gobin, if he is asymptomatic purely because he's on medication and the state is able to show that in their opinion he will not take his medication if he is not in the supervised setting, does that change your analysis? I mean, in and above itself, do you believe that just the fact that he's asymptomatic? Well, I think not asymptomatic in itself. I mean, I'm sure there's some individuals, but here they presented really no evidence of why asymptomatic. My reading of the law would be that a person would have to show some symptoms of mental illness because being mentally ill in and of itself is not sufficient to commit someone. And I know it's a tricky situation whether future conduct is enough to commit someone. The cases that have affirmed commitment based on future conduct, the person at that time exhibited symptoms of his mental illness, that they were either delusional or they had out and out right symptoms. And he may have had symptoms at that time, but here the state testified that he had currently no symptoms and that he was compliant with the medication. Was there any evidence that he was not compliant with the medications? Because the trial judge found obviously that he wouldn't stay on his meds. Based upon Ms. Mott's testimony, which was totally speculative. Right. She said in the past he failed to comply with the meds, but didn't state when, didn't state how long ago. There's an interesting Supreme Court case, Fuchsia, which stated that a person cannot be, it has to be based on the person's criminal commitment, which is a little bit, I would say, a higher standard, a lower standard to commit someone in civil commitment. But in a recent fourth, a first district case where they considered the Fuchsia current illness argument, in that case they affirmed the commitment because there was testimony that the respondent was mentally ill. There was no testimony that the respondent was mentally ill and then stopped showing symptoms or signs of mental illness. On this one, I think probably, knowing kind of the history of the state's attorney there, probably had some signs of mental illness, but they never gave any testimony to that. They said he was asymptomatic. And if you look at the code, it says, is the use of present tense, the use is reasonably expected, is unable to understand his need for treatment. So the legislature's use of the present tense and not future or past is indicative of this requirement of the current condition of the person. And also the code's enactment of every review of every 90 days of this, and 180 for later, is a key thing that they want the current condition. And the there is a third district case, Boninger's saying just the potential for harm is not sufficient for commitment. And also there's people versus Nunn and people versus Smith saying that a reason that the respondent might fail to take psychotropic medication does not satisfy the clear and as I stated before, when they have affirmed commitment based on future dangerousness, it's only when the respondent at the time of the hearing exhibited some signs of a mental illness. And there's no case law that supports the position that a state could simply commit an asymptomatic individual. And the state itself and its response only cite four precedent with regard to criminal cases. And it may be that a lot of these problems would be resolved if the state would spend maybe 10 more minutes developing the testimony from the witness. Is that right? Maybe ask the question, explain to us the basis for your opinion. Right. And I think that or why, just basically why. A non-leading question. And they are, and I guess this goes into the mootness issue too, they are actually reforming in some ways. They are now having hearings. Their orders have now been corrected since I filed this appeal. They do include statements of fact, but I think they need more direction that, you know, this could have been clarified with more of his past history probably provided with a further explanation. You know, the clear and convincing evidence standard is key on this because, you know, the Illinois Supreme Court rejected the preponderance evidence of standard because to commit someone there needs to be a certainty of evidence, a certainty that the person to deny their liberty interest. And by answering just yes or no and not giving the explanation for it, you erode that certainty of evidence. And we argue that this issue is not new. And to really argue that this appeal must go will help guide, I think, the lower court in conducting better evidentiary hearings on these issues. And certainly, I wish I could believe that. I'm optimistic. I mean, we got hearings now. We got, you're saying you're making some inroads. Yeah. And I'm trying to dialogue with the public defender. I'm actually got an issue resolved with medication. I'm going a little off track here, where they used to order 19 meds and the same meds for each case for each person. I got them to change that. So I threw a motion to reconsider. So it is making inroads on this. And with. Was there any evidence that other than this prior six months testimony that this person was not in compliance with treatment and medications? Because there was evidence that six months prior, he had been restrained. Right. In April of 2000. Right. November of 2008. The hearing in November. That's right. It was April. Anything other than that six months ago? Right. Nothing more current than that was presented, which kind of, you know, I think by statute, they require more current information because they require a review every six months. You know, you're saying, in essence, they were relying on the same information as the last review. Right. And also, you know, even if I normally say even if they argue the stuff in their treatment plan or in their certification, but in this case, I just look, they're really actually a little bit old and still at that point, too. But if they present the evidence, you know, even if they just read it and explained it more, it would have presented, it had a full case. I think, you know, it's just an issue of telling the person, respecting the respondent enough to tell him, well, yeah, you're on meds. He was complying with meds, you know, but this is the reason why you still have to be here. You know, and that's why I think the least restrictive environment question is key because there are other places, structured settings like nursing homes or group homes, where, you know, there would be a structure of applying the medication, which is a less restrictive environment. And there is the reason why the code and precedent requires information about a less restrictive setting is because you're denying someone's liberty interest and the constitution requires this infringement as least drastic means available. So there could have been a less drastic of a nursing home or probably wouldn't accept it, but a group home would, where, you know, they could monitor his medication with it. Furthermore, the issue with regard to the compliance with the mental health code and the state confessed error with regard to the order. There's a second point, though, and it's section 3601B2, and I call that the friends and family section, where the petition for involuntary admission has to include the names and addresses of friends and family. In this case, they put N.A. So I don't know why they put it as not applicable, whether they feel it doesn't apply to continuing commitment petitions, you know, or whether he didn't give information about his friends or family. I think, though, it states in his own family that he's presented, and the reason why they have this provision in the statute, it's a check against continuous erroneous commitment. Also, I've had, in other cases, people, friends and family call, what's the status of them? They don't have any clue. This is a way to keep notifying the friends and family interested parties in the person's status there. And I guess it cuts both ways. Friends and family may show up and say, please don't let him out. Right. You know, I mean, so. Right. So it helps both. And it is, there's been substantial, there's been no fifth district case on this section. So, but there's been two fourth district cases that reversed on this issue. There has been lately kind of a substantial compliance, but in this case, but in the cases where there was substantial compliance, the state testimony said that mother had been contacted and did not wish for a respondent to return home, which is kind of like your case. So it actually helps the state. There's another one where a respondent has never provided the information and the petition otherwise refers only to abusive ex-boyfriend. So there's factual information somewhere provided in the petition where the friends and family are. You know, and they also, another case where they found substantial compliance was when they filed paperwork indicating there was a diligent attempt to learn about respondent's friends and family. Here, neither, none of the three applied. And I, I just think the, the NA is just maybe an indication of their pro forma nature of how they conduct these hearings. I, you know, where if they notify the friends and family, there could be more input into it more. And oftentimes too is these, you know, Chester gets people from Chicago. I think actually my client was normally from up north. And so, you know, they don't, the friends and family aren't close by to, to keep an eye. And I think this notification of progress is key. The state said, well, one of their arguments is that the certifier's disclosure of the rights to speak to the relative satisfies this requirement. But actually that ignores the plain reading of the statute that has two mandates of shall with regard to this requirement. It also would shift the burden to the respondent to fulfill, to notify the relatives where it's really, it should be the petitioner. There's nothing in the statute that says that the friends and family have to be within a certain geographical limitation. No, no. I'm just saying that's the reason why kind of, you know, from, and it would also ignore that the purpose is to notify the parties, you know, with regard to the continuing commitment. And with regard to the issue of the asymptomatic person being committed and the potential for refusal to take medication, a person does have a constitutional right to refuse to take medication. You know, so that's why courts have been reluctant to commit solely on that basis. But I think probably reviewing this, it's probably another case where the state just didn't present enough evidence. Any further questions? I think so. Thank you. Ms. Peterson. First of all, I do want to make it clear that we are proceeding that last issue. It certainly does apply, the public interest exception applies to that section especially. There's just no way around it. The court didn't make a statement of facts. It has to go back. I do think that there is argument to be made about the mootness issue as to the other issues. But before I get to that, I think as far as the friends and family section goes, the argument that we made in our brief is that in this case, I believe that if it wasn't the therapist who testified, it was in the, one of the certificates or something along the petition that stated that this respondent did have contact with his family fairly regularly, whether they came to visit him or called or wrote or what, I don't know. There was information that he was in contact with them pretty regularly. However, also, and why the petition said N.A. in this section where it talks about friends and family, I don't have a clue. Not only does the statute require that it be in the petition, information about family, but it also goes on to say that if they can't supply that information, they must state that a diligent inquiry was made. That's right. It should never be N.A., should it? Well, I would personally, I would like to see it more rounded out, personally. And evidently the legislature would too. Well, you would think. However, the case has also said that it should be viewed in its entirety. And the history shows that this respondent had a history of being abusive and threatening to his family. Was that before the court? Had that been put in? It was in the certificates. It was not part of the testimony, though. Wouldn't that be a good reason for them to be notified that there was going to be a hearing? I don't think so, yes. So, you know, I think it's arguable either way, that particular section. If you look at everything, all the information, including the testimony and what was said in the certificates and the petition, that there's, it can be gleaned by the court that there was a reason why and there was due diligence, but there was a reason why these people weren't going to appear and weren't going to make suggestions about bringing them home. So you're saying the court should have gleaned from seeing a not applicable? Not from the N.A., but from all the information that was contained with the petition, the certificates, and all the other information that came about his history with his family, that they would not want him coming home and did not want to, I mean, they were being informed since they were either coming to visit or calling or whatever. They knew what his status was. Well, you know, and I tried to make the point with Ms. Gobin, I mean, it seems to me like, I mean, the statute doesn't say we're putting this requirement in because we want them to be able to come and support him. That's right. And especially if you have maybe a family member who's been committed, who's been abusive to family members, you want to know if he was about to get out. I agree. And I do think that this section should be more strictly enforced. It should be expected to be. I do think, and we made the argument that because of everything else in the statute, whether this individual can be, or whether this person was, in fact, what we're looking at is, in fact, an asymptomatic individual. Is he over this? Is he no longer a threat to himself or others? I think that is something that doesn't fall within the public interest exception to the mootness doctrine. I think that it is arguable that it could come under the capable of repetition but avoiding review, but then that has its own requirements, including that this would be I'm not sure that that specific thing is going to do that. It doesn't seem like any decision from this court has made a difference. I think it has, though, Your Honor. I think it has. As Ms. Gobin has said, I believe that the circuit courts are trying to make a little bit. And that's why rather than just requesting reversal in the issue that we are conceding, we would like to have the court try and offer some more guidance to the trial courts. I think that they are making progress in that area. As far as whether he's asymptomatic, I think that the way that the was that he's asymptomatic at this time due to his medication. That's not the same as saying it's all over, he's okay, everybody's safe, including himself. And so what would you ever be able to prove for somebody who is asymptomatic if he's on medication to justify and continue involuntary admission? I think that, you know, under this case and the facts that we have here, I don't think it's possible. I do think that there are cases where it is possible. I think this particular individual may Somebody who was asymptomatic and on medication was released and then reoffended. Right. Yeah. Right. And that's the evidence that we have here. And this therapist did testify that he has a history of not complying with medication when he's given the opportunity to do so. So does that mean that they can hold him for 10 more years because of that? No. What does that mean then? I think what it means is what the therapist testified to, and that is that he's only been asymptomatic here for such a short period of time that, and it hasn't been for the 180 days. It's only been for a month or two since he was transferred out of that one unit. Because before he was transferred out of that one unit, he was still being aggressive and threatening to staff. Now he's been transferred, he doesn't seem to be exhibiting those types of symptoms anymore, which is attributable to the medication. And I also think from the therapist's testimony that it appears that it's because of his environment that he was in at that particular time. Whether that could be maintained for, you know, even another 180 days, I think would be helpful. And I think that's what the therapist was trying to get at. And did the therapist say all those things you just said? Or do we kind of extrapolate from that? Not in that way, but what the therapist did say was he or she, I can't remember, it was Tracy was the first name, so I'm not sure whether it was he or she, stated that he didn't believe that he would be able to take care of his own needs. Let's see, there was one place where, oh, he said something due to his history. His behavior seems to have improved, so we'll need to keep up with that. And due to his history of aggressiveness, as well as sexual deviant behavior, he's going to have to go for a prolonged time. It appears that he's making improvements while in the current setting. My understanding of what the therapist was saying was we need a little more time to see if he's going to be able to keep this up. He hasn't been able to keep it up in the past. But, I mean, even at 180-day increments, if they can keep seeing that he's doing this, then they're going to be able to say with some confidence, I think he can go on to the next step, a nursing home or a group home or whatever. At this point, the therapist was not comfortable with doing that. And I think that the court understood that, obviously. And I don't think that the evidence is, it shows that the other result is proper, which is the manifest way to the evidence standard. How about the least restrictive setting? There again, we, as Judge Stewart said, I think it would be helpful to have about 10 more minutes of testimony in that specific question. Because that wasn't addressed at all, was it? Not, no, it wasn't. It wasn't. Unless you want that under what the therapist said about not being ready yet, we need some more time. And, you know, but that was not specifically mentioned. So the bottom line is, I think that the question of whether somebody is asymptomatic to the point that they can move on to the next step down, as far as security goes, is something that has to be addressed on a case-by-case thing. We can't say that, okay, they do this and that, they're automatically asymptomatic and to the point where they can move on, has to be addressed according to their history. But you're making her case, it has to be fleshed out then. It does have to be fleshed out. And it has to be fleshed out on a case-by-case basis. That's why we would like the court to, when it reverses and sends it back, send it back with directions on these issues that will help the court to, and the state's attorney, and the public defender, whoever is taking care of these cases, help them to do it so that we won't be back. We are making progress, and we just need a little more help. Thank you. Thank you. Ms. Goldman, do you have a follow-up? Basically, the, you know, counsel cited her explanation about his history. Actually, that was brought up on cross-examination, so it wasn't even part of the state's case. Yeah, it wasn't even part of the direct. And the issue of, I think it, you know, the Illinois Supreme Court really clearly stated that it has to be clear and convincing evidence for the due process. And that's why it's not beyond a reasonable doubt. That's not why it's preponderance, because you balance the society interest versus the individual interest. And in this case, because there was such scanty evidence, I think it is a violation of due process, because they just did the, you know, the lowest level of evidence, really. I mean, we're speculating, we're gleaming. It should be certain evidence, as the Illinois Supreme Court said. And they are, you know, this court is helping and guiding Randolph and the other lower courts. There has been improvement on this, so. Thank you, Ms. Goldman. Thank you, Ms. Peterson. We'll take the matter under advisement for underruling in due course. We are almost on the hour, and this court stands.